**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| v. | 1:23-mj-00015-WAL-EAH |
| **ADOLPFUS PENNYFEATHER,** | |
| Defendant. | |

**TO:**   Michael Conley, Esq., AUSA
Gabriel J. Villegas, Esq., AFPD

**REPORT & RECOMMENDATION**

**THIS MATTER** comes before the Court on the "Unopposed Motion for Expedited Competency Report and Recommendation" filed on March 26, 2025 by Gabriel Villegas, Esq., AFPD, on behalf of Defendant Adolpfus Pennyfeather. Dkt. No. 22.[1] In light of the motion, and the Court's finding that there was reasonable cause to believe that Mr. Pennyfeather may presently be suffering from a mental disease or defect rendering him mentally incompetent to understand the proceedings against him and to assist in his defense, the Court held a competency hearing on July 10, 2025. Attorney Michael Conley appeared on behalf of the Government and Attorney Villegas appeared on behalf of Mr. Pennyfeather. For the reasons that follow, the Court recommends that the District Judge declare Mr. Pennyfeather incompetent to proceed and order—pursuant to 18 U.S.C. § 4241(d)—that he be committed to the custody of the Attorney General for treatment in a suitable facility for not more than four months to determine whether he may ever attain the capacity to permit these proceedings to go forward.

---

[1] On June 24, 2025, the District Judge referred the motion and all related proceedings to the undersigned Magistrate Judge for a Report and Recommendation. Dkt. No. 23.

## BACKGROUND

### I. Early Procedural Background

On August 14, 2023, the Government filed a Complaint charging Adolpfus Pennyfeather with assaulting, resisting, or impeding officers in violation of 18 U.S.C. § 111(a)(1); interfering with agency functions in violation of 36 C.F.R. 2.32(a)(1); and violating lawful order in contravention of 36 C.F.R. 2.32(a)(2). Dkt. No. 1. The affidavit accompanying the Complaint alleged that Mr. Pennyfeather had been banned from sitting in a bandstand in the Christiansted National Historic Site after defecating, chasing minors while naked, and using narcotics there. Dkt. No. 1-1. But on August 11, 2023, a National Parks Service officer saw Mr. Pennyfeather in the bandstand, ostensibly with marijuana, which the officer confiscated, before seizing Mr. Pennyfeather, who had attempted to walk away. *Id*. Mr. Pennyfeather allegedly tried to punch the officer, who beat Mr. Pennyfeather to the ground. *Id*. Mr. Pennyfeather was then arrested without further incident and brought to Court on the present charges. *Id*.

On August 15, 2023, Attorney Villegas filed an unopposed motion for evaluation to determine mental competency. Dkt. No. 6. The Court granted the motion. Dkt. No. 9. It also found probable cause as to the charges contained in the Complaint and bound Mr. Pennyfeather over to the District Judge for further proceedings. Dkt. No. 8.

On November 28, 2023, the Court received in its Chambers email a psychological evaluation report (the "Report") as to Mr. Pennyfeather from forensic psychologists at the Metropolitan Detention Center ("MDC") in Los Angeles.

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 3

## II. The Competency Report

The Report, dated November 27, 2023, details the findings made by two forensic psychologists—Drs. E. Morse, and S. Shelton—indicating that Mr. Pennyfeather was schizophrenic and had an intellectual disability "which significantly impairs his ability to understand the nature and consequences of his charges and court proceedings." Report Cover Page. The report stated that Mr. Pennyfeather was not responsive in providing any personal background information beyond his desire to return to St. Croix. Report at 2. Therefore, the evaluators contacted his mother who stated that, as a child, Mr. Pennyfeather demonstrated poor hygiene and an inability to care for himself without direct instruction. She noted that in school he was in special education programs for a learning disability and was "very delayed in growing up." *Id*. He was enrolled in adult education after he turned eighteen, but did not go. Instead, due to familial circumstances, Mr. Pennyfeather ended up homeless. *Id*.

Mr. Pennyfeather's mother explained that she had recently contacted Mr. Pennyfeather, who was struggling to put together complete sentences or competently communicate. She said he responded like a five- or six-year-old. She reported that he often talked by himself and was recently diagnosed schizophrenic. She noted that at one point he was in a mental health institution, where his mental health improved. *Id*.

The Report indicated that Mr. Pennyfeather has had frequent contacts with the legal system, generally for minor offenses, but that he was always found incompetent to stand trial, leading to the dismissal of the charges against him. *Id*. at 3. Educational records revealed that Mr. Pennyfeather performed at a second-grade level in reading, arithmetic, and spelling.

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 4

*Id*. Based on a review of Mr. Pennyfeather's health and mental health records, the evaluators noted increased symptoms of paranoia over time. He frequented the Juan F. Luis Hospital, but always left before the hospital could provide a full evaluation and treatment. He exhibited suicidal and homicidal ideation and his "mental health complaints are consistent with the typical onset age and trajectory of psychotic related illness." *Id*. at 4.

Observations at the time of the evaluation revealed that Mr. Pennyfeather presented with poor grooming and hygiene, but no impairment in gross or fine motor functioning. *Id*. at 5. He was disoriented during his contacts with his evaluators, unable to identify where he was or why he was hospitalized, confused and agitated, and unable to retain information, suggesting deficits in either attention, concentration, or memory. *Id*. After his initial intake in MDC – LA—during which time he expressed suicidal ideation, failed to engage meaningfully with staff, made threats, and smeared feces on his clothing and blanket—he was transferred to a local hospital for psychiatric hospitalization, where he remained throughout the period of his evaluation. *Id*.

At that hospital, he was diagnosed as schizophrenic and prescribed antipsychotic medication. During his hospitalization he often required sedation due to his manic and sometimes aggressive behavior, and he was described as "hard to redirect." *Id*. He often threatened staff. On one occasion, he defecated on the floor, then put underwear on his head, then put his shampoo, comb, socks and other items inside the underwear. *Id*.

In addition to schizophrenia, the evaluators diagnosed Mr. Pennyfeather as moderately intellectually disabled. *Id.* at 6. However, the report noted that both diagnoses were made with "limitation" due to Mr. Pennyfeather's inability to meaningfully report his

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 5

history or symptomology. For example, the evaluators had trouble ascertaining the extent and scope of his intellectual disability, because some symptoms of schizophrenia mirror symptoms of intellectual disability and because it was not clear what was a result of substance use, compared to natural biological processes. *Id*. at 7. The report indicated that Mr. Pennyfeather demonstrated delusional beliefs, issues related to his emotional expression, speech, and behavior, and hallucinations during his evaluation, although he denied having seen or heard things, despite significant evidence to the contrary. *Id*. at 6-7. Mr. Pennyfeather was not receptive to the possibility that he had mental illness. *Id*.

The evaluators gave a guarded prognosis. His schizophrenia might not improve over time, even with treatment, although some symptoms might improve with treatment. *Id*. at 7. However, Mr. Pennyfeather was not compliant with taking his medication and did not always engage meaningfully in treatment. Accordingly, the evaluators suggested he might require involuntary treatment and close monitoring to ensure he remained compliant. *Id*. The prognosis for Mr. Pennyfeather's intellectual disability was fair, but given the lack of clarity on the symptomology and benefits of possible interventions, the report spoke only in general terms. *Id*. at 7-8. Importantly, when Mr. Pennyfeather was asked if he thought he was mentally ill, he said "A little. Yes. Why? I don't think that." *Id*. at 8. He denied needing or taking medication. *Id*.

The evaluators were unable to perform many of their typical tests because of Mr. Pennyfeather's inability to focus and respond to questions asked of him. *Id*. But they were able to conduct a partial assessment, which revealed that Mr. Pennyfeather "demonstrated a poor understanding of the nature and consequences of the court proceedings against him, as

well as impairment in his ability to cooperate and assist counsel in his defense." *Id*. at 8. He was unable to retain information about the court process. *Id*. He demonstrated a poor understanding of the roles of courtroom participants and related procedures. *Id*. He was apparently unaware of the prior court proceedings against him or of the previous competency evaluations he had undergone. He denied having done anything wrong and stated that he just wanted to "go away and sleep and eat your food." *Id*. During the evaluation he was unaware of whether he had an attorney. He also demonstrated poor insight into proper social behaviors, making it unlikely that he could comport himself in court. *Id*. The evaluators therefore opined that Mr. Pennyfeather would not be able to adequately assist his counsel in mounting a defense or in understanding the nature and consequences of the charges against him. *Id*. They recommended that he be committed to a medical center pursuant to 18 U.S.C. § 4241(d). *Id*. at 9.

### III.   Recent Procedural Background

After receiving the Report, the Court held a Status Conference on December 15, 2023, but no further action was undertaken to move this case along. Mr. Pennyfeather has remained incarcerated, although at some point he was moved from the MDC in Los Angeles, where he was evaluated, to MDC Guaynabo in Puerto Rico, where he has since remained in custody.

Nearly a year later, on December 13, 2024, the Government filed a Motion to Dismiss the charges against Mr. Pennyfeather, stating "this defendant has been deemed incompetent with a significant impairment of his ability to understand the nature and consequences of his charges and court proceedings and is not able to assist his counsel in mounting any defense."

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 7

Dkt. No. 16. In consideration of this motion, the Court held a Status Conference on December 16, 2024. Dkt. No. 17.

At the Status Conference, the Government explained that it filed the Motion to Dismiss following contact from MDC Guaynabo officials as to the status of Mr. Pennyfeather. The officials explained that Guaynabo was not an adequate facility for the long-term care or treatment of Mr. Pennyfeather, who was severely mentally ill. Attorney Villegas concurred. All parties agreed that a proper future for Mr. Pennyfeather would be one in a residential treatment facility on St. Croix with individualized care. To achieve this result, the parties asserted that Mr. Pennyfeather should be hospitalized pursuant to 18 U.S.C. § 4246, entitled "Hospitalization of a person due for release but suffering from mental disease or defect." The primary purpose of this statute is to get the local government, here the Government of the Virgin Islands, to assume responsibility for the care and treatment of mentally diseased individuals. A Government attorney left the Status Conference intending to begin the process for commitment under § 4246.

By March 10, 2025, neither party had taken any steps to move this matter forward, so the Court held another Status Conference. Dkt. No. 19. At the Conference, the Government reported that the Bureau of Prisons was unwilling to submit the certification necessary to initiate proceedings under § 4246 without a § 4241 commitment order. Therefore, on March 26, 2025, Attorney Villegas filed the instant Unopposed Motion for Expedited Competency Report and Recommendation. Dkt. No. 22. In it, the Defendant requests that the Court issue a report and recommendation pursuant to 18 U.S.C. § 4241(d) ordering that Mr.

Pennyfeather be committed for treatment and attempted restoration to competency. *Id*. The Government did not oppose the request. *Id*.

## IV. Competency Hearing

At the July 10, 2025 Competency Hearing, the Government submitted the Report, and proffered that Bureau of Prison doctors believe the Report continues to accurately describe Mr. Pennyfeather's present mental condition. Those doctors opined that Mr. Pennyfeather would benefit from commitment to a medical facility. Attorney Villegas agreed, explaining that little has changed as to Mr. Pennyfeather's mental health since the Report was drafted in November 2023. Mr. Pennyfeather continues to act out, have psychotic episodes, defecate in inappropriate places, and frequently requires significant restraint to prevent him from harming himself or others. Attorney Villegas asserted that as recently as July 2, 2025, Mr. Pennyfeather was so mentally unwell that prison officials denied access to members of his defense team to visit him. In sum, both parties agreed that the findings made by the forensic psychologists in November 2023 continue to define Mr. Pennyfeather's present mental state.

## DISCUSSION

## I. Legal Standard

Our legal system has long recognized that "'a person whose mental condition is such that [the person] lacks the capacity to understand the nature and the object of the proceedings[,] . . . to consult with counsel, and to assist in preparing [a] defense may not be subjected to a trial.'" *United States v. Leggett,* 162 F.3d 237, 241 (3d Cir. 1998) (alterations in original) (quoting *Drope v. Missouri,* 420 U.S. 162, 171 (1975)). Thus if, after a hearing, a court finds by a preponderance of the evidence that a defendant is "presently suffering from a

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 9

mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," the court is required to "commit the defendant to the custody of the Attorney General" who "shall hospitalize the defendant for treatment in a suitable facility[.]" 18 U.S.C. § 4241(d).

To be competent to stand trial, a defendant must "have a rational and factual understanding of the proceedings, and a 'sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding.'" *United States v. Brown*, 147 F. Supp. 3d 312, 315 (E.D. Pa. 2015) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). When evaluating a defendant's competency, courts often consider "evidence of a defendant's irrational behavior . . . any prior medical opinion on competence to stand trial . . . [and] an attorney's representation about his client's competency." *Id.* at 316 (citing *Leggett*, 162 F.3d at 242). However, the Court may consider all relevant factors, as there is "no predetermined formula" for making a competency determination. *Leggett*, 162 F.3d at 242. "

"At the competency hearing, the Government has the burden to prove the defendant's competency." *United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1985). Courts have found consensus between the Government and the defendant as to the defendant's mental condition to be significant in evaluating the defendant's competency to proceed. *See, e.g., United States v. Royce*, No. 17-cr-158, 2021 WL 5889802, at *2 (M.D. Pa. Dec. 13, 2021).

II.   **Analysis**

Since appearing before this Court at his Initial Appearance, both the Government and counsel for the Defendant have agreed that Mr. Pennyfeather has struggled to understand

the proceedings against him and has been unable to adequately assist in his defense. The parties' belief is buttressed by the findings of the forensic psychologists who evaluated Mr. Pennyfeather and determined that he has long-term disabilities that are likely to continue for the rest of his life, even with treatment, and will affect his competency to stand trial. The Report clearly evinced that Mr. Pennyfeather was not aware of why he was incarcerated or the charges against him. *See* Report at 8. The evaluators determined that he has a limited understanding of the nature and consequences of the proceedings against him and an impaired ability to assist in his defense. He did not understand the roles of the judge, prosecutor, or jury, and was unaware of whether he had an attorney. *Id*.

Mr. Pennyfeather also demonstrated no recognition of his own mental illness (responding "A little. Yes. Why? I don't think that." when asked whether he believed he was mentally ill), and of his past interactions with the legal system and competency evaluations. *Id*. He showed erratic, and sometimes violent, behavior. *See id*. at 5 (threatening hospital staff). Importantly, given Mr. Pennyfeather's inability to acknowledge his mental health issues and his reluctance to take medication, "he may require involuntary treatment." *Id*. at 7. Per the Report, Mr. Pennyfeather has often been prescribed medication but has failed to adhere to his treatment regimen. *Id*. at 4.

Since the evaluation described in the Report was conducted, little seems to have improved. Mr. Pennyfeather's "mental disease or defect" so impacted him as recently as July 2, 2025 that it prevented him from being able to consult with a member of his defense team, demonstrating a clear inability to assist in his defense. Moreover, the doctors presently

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 11

treating Mr. Pennyfeather remain of the opinion that his mental condition is unstable and that he should be committed to a medical facility.

Accordingly, all relevant factors indicate, and the Court finds by a preponderance of the evidence, that Mr. Pennyfeather is "presently suffering from a disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241. Therefore, pursuant to 18 U.S.C. § 4241(d), the Court recommends that he be committed to the custody of the Attorney General to be hospitalized and treated for no more than four months.

## CONCLUSION

Accordingly, the Court respectfully **RECOMMENDS** that the District Judge: (1) conclude that Mr. Pennyfeather "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense," 18 U.S.C. § 4142(d); (2) commit Mr. Pennyfeather to the custody of the Attorney General to be hospitalized for no more than 120 days from the date of his arrival at the facility, as is necessary to determine whether there is a substantial probability in the foreseeable future that he will regain his mental faculties, *id.*; and (3) require the director of the facility where Mr. Pennyfeather is hospitalized to provide regular reports on the progress of that evaluation.

Any objections to this Report and Recommendation must be filed in writing within fourteen (14) days of receipt of this notice, 28 U.S.C. § 636(b)(1), and must "specifically

*United States v. Pennyfeather*
1:23-mj-00015-WAL-EAH
Report & Recommendation
Page 12

identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection." LRCi 72.3. Failure to file objections within the specified time shall bar the aggrieved party from attacking such Report and Recommendation before the assigned District Court Judge. *See, e.g., Thomas v. Arn*, 474 U.S. 140 (1985).

                                                                                                                    ENTER:

Dated: July 11, 2025                                      /s/ Emile A. Henderson III
                                                                                    EMILE A. HENDERSON III
                                                                                     U.S. MAGISTRATE JUDGE